JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Amy Galette

## DEFENDANTS

Villanova University

**(b)** County of Residence of First Listed Plaintiff   Montgomery County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Delaware County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Daniel S. Orlow, Esq., Console Mattiacci Law,
1525 Locust Street, 9th Fl., Philadelphia, PA 19102, 215-545-7676

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | ☐ 871 IRS—Third Party 26 USC 7609 | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §2000e, et seq.; 43 P.S. §951, et seq.

Brief description of cause:
Plaintiff was discriminated and retaliated against because of her sex.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
in excess of $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
5/4/2023

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ Conshohocken, PA _____

Address of Defendant: _____ 800 Lancaster Avenue, Villanova, PA 19085 _____

Place of Accident, Incident or Transaction: _____ 800 Lancaster Avenue, Villanova, PA 19085 _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?

   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?

   Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?

   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?

   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 05/04/2023 _____ _____ 311702

            *Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.**   *Federal Question Cases:*        **B.**   *Diversity Jurisdiction Cases:*

| A. Federal Question Cases | B. Diversity Jurisdiction Cases |
|---|---|
| ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts | ☐ 1. Insurance Contract and Other Contracts |
| ☐ 2. FELA | ☐ 2. Airplane Personal Injury |
| ☐ 3. Jones Act-Personal Injury | ☐ 3. Assault, Defamation |
| ☐ 4. Antitrust | ☐ 4. Marine Personal Injury |
| ☐ 5. Patent | ☐ 5. Motor Vehicle Personal Injury |
| ☐ 6. Labor-Management Relations | ☐ 6. Other Personal Injury *(Please specify):* _____ |
| ☑ 7. Civil Rights | ☐ 7. Products Liability |
| ☐ 8. Habeas Corpus | ☐ 8. Products Liability – Asbestos |
| ☐ 9. Securities Act(s) Cases | ☐ 9. All other Diversity Cases |
| ☐ 10. Social Security Review Cases | *(Please specify):* _____ |
| ☐ 11. All other Federal Question Cases | |
| *(Please specify):* _____ | |

---

### ARBITRATION CERTIFICATION
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Daniel S. Orlow _____, counsel of record *or* pro se plaintiff, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☒ Relief other than monetary damages is sought.

DATE: 05/04/2023 _____ _____ 311702

            *Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Amy Galette | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| Villanova University | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants.  (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                   ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                   ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                              ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                 ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.         ( X )

| | | |
|---|---|---|
| 5/4/2023 | *[signature]* | Plaintiff, Amy Galette |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-545-7676 | 215-405-2900 | orlow@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

_____
                                    :
**AMY GALETTE**                     :        **CIVIL ACTION NO.**
                     **Plaintiff,** :
                                    :
         **v.**                     :
                                    :
**VILLANOVA UNIVERISTY**            :
                                    :        **JURY TRIAL DEMANDED**
                                    :
                    **Defendant.**  :
_____    :

## COMPLAINT

## I.   INTRODUCTION

Plaintiff, Amy Galette, brings this action against her former employer, Villanova University ("Defendant").

Plaintiff, a long-serving and dedicated employee of Defendant, was subjected to a sex-based stereotype that her positive relationship with a higher-ranking male co-worker implied a romantic relationship. After Plaintiff complained of the discriminatory stereotyping to which she was subjected, she was denied a promotion for which she was highly qualified. Defendant failed to adequately investigate Plaintiff's complaint of discrimination, leading to her resignation in August of 2022.

Defendant engaged in discriminatory and retaliatory conduct towards Plaintiff in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"). Plaintiff seeks all damages allowable under law, including back pay, front pay, compensatory damages, punitive damages, and attorney's fees and costs.

## II.   PARTIES

1.      Plaintiff, Amy Galette, is an individual and a citizen of the Commonwealth of Pennsylvania, residing therein in Conshohocken, Pennsylvania.

2.      Plaintiff is female.

3.      Defendant is organized under the laws of the Commonwealth of Pennsylvania and maintains a principal place of business at 800 Lancaster Avenue, Villanova, PA 19085.

4.      Defendant is engaged in an industry affecting interstate commerce and regularly does business in the Commonwealth of Pennsylvania.

5.      At all times material hereto, Defendant employed more than fifteen (15) employees.

6.      At all times material hereto, Defendant acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

7.      At all times material hereto, Defendant acted as an employer within the meaning of the statutes which form the basis of this matter.

8.      At all times material hereto, Plaintiff was an employee of Defendant within the meaning of the statutes which form the basis of this matter.

## III.   JURISDICTION AND VENUE

9.      The causes of action which form the basis of this matter arise under Title VII and the PHRA

10.      The District Court has jurisdiction over Count I (Title VII) pursuant to 42 U.S.C. § 2000e-5 and 28 U.S.C. § 1331.

11.      The District Court has supplemental jurisdiction over Count II (PHRA) pursuant to 28 U.S.C. § 1367.

19.      Venue is proper in the District Court under 28 U.S.C. §1391(b) and 42 U.S.C. §

2000(e)-5(f).

20.    On or about July 5, 0222, Plaintiff filed a Complaint of Discrimination with the Pennsylvania Human Relations Commission ("PHRC"), complaining of the acts of discrimination and retaliation alleged herein.   This Complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC").   Attached hereto, incorporated herein, and marked as Exhibit "1" is a true and correct copy of the PHRC Complaint of Discrimination (with personal identifying information redacted).

21.    On or about February 7, 2023 the EEOC issued to Plaintiff a Notice of Right to Sue for her Complaint of Discrimination.   Attached hereto, incorporated herein, and marked as Exhibit "2" is a true and correct copy of the Notice of Right to Sue (with personal identifying information redacted).

22.    Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

**IV.    FACTUAL ALLEGATIONS**

23.    Plaintiff was initially hired by Defendant on or about February 25, 2008.

22.    At all relevant times, Plaintiff held the position of Major Gifts Officer.

24.    In or about March 2019, Plaintiff began reporting to Brendan Glackin (male), Director of Major Gifts.

25.    Glackin reported to Kevin Noller (male), Associate Vice President for Major Gifts.

26.    In March 2021, Plaintiff received a "Highly Successful" performance review rating.

27.    On January 26, 2022, in an email from Ray Duffy (male), Associate Vice President of Human Resources, he stated that there would be an investigation to gather positive and negative feedback as Defendant embarked on a new fundraising campaign.  He stated that "a random sample

of staff at all levels" would be contacted to schedule a one-on-one feedback session with Kelly
Day (female), an external investigator, and anyone who was not randomly selected was also invited
to participate by contacting Day directly.

28.     On February 7, 2022, Plaintiff met with Day and answered her questions regarding
the University Advancement ("UA") department.

29.     Day asked Plaintiff whether she had ever spent time alone with Michael O'Neill
(male), Senior Vice President.

30.     Plaintiff responded that she had, and Day did not ask for any details or examples.

31.     At no time did Plaintiff have a sexual or otherwise inappropriate relationship with
O'Neill.

32.     On March 1, 2022, Julie Morrison (female), Executive Director of Special Events,
told Plaintiff that during her meeting with Day she was asked about the nature of Plaintiff's
relationship with O'Neill.

33.     Morrison told Plaintiff that she was asked about times that she saw O'Neill and
Plaintiff together, whether she had seen O'Neill treat Plaintiff differently, and whether she knew
of times when O'Neill and Plaintiff may have been alone together outside of work.

34.     On March 1, 2022, following the above, Plaintiff told Glackin about her
conversation with Morrison.  Plaintiff explained that she was upset that it was implied that she had
an inappropriate relationship with O'Neill.

35.     On March 1, 2022, following the above, Plaintiff told Noller about her conversation
with Morrison.  Plaintiff explained that she was extremely upset that it was implied that she had
an inappropriate relationship with O'Neill.

36.     Noller told Plaintiff that he, too, was asked questions about her relationship with O'Neill.

37.     On March 1, 2022, following the above, in an email to Duffy and Jen Derry (female), Assistant Vice President of Human Resources, Plaintiff stated the following: "After connecting with Kevin Noller just now, I understand that you'd welcome a conversation based on the fact that a colleague informed me of a line of questioning that was suggestive of a relationship involving myself and Mike O'Neill that could have crossed professional and platonic lines. . . . I am rather upset learning that a colleague of mine was openly asked a line of questioning which would have suggested involvement between Mike [O'Neill] and me spanning outside a professional and friendly relationship. I feel let down and I'd like to discuss this with you or a member of your team to help me understand how this was OK and how I'm not supposed to think that these false statements may negatively impact my reputation which I've built since 2008. Especially since I presume Kelly asked more than just one person (and yet somehow this did not come up in my own line of questioning with her)."

38.     On March 1, 2022, following the above, Plaintiff informed Emily Marbot (female), Director of Talent Management, that she wanted to speak with her regarding an issue that was "highly sensitive."  Plaintiff informed Marbot that she had sent an email to Human Resources about the issue, and shared her March 1, 2022 email to Duffy with Marbot.

39.     On March 1, 2022, following the above, Plaintiff complained of sex discrimination to Marbot.  Plaintiff stated that, because she is a woman who had a positive working relationship with O'Neill (her superior), there were rumors being spread that she had an inappropriate relationship with him.

40.     Marbot asked Plaintiff to keep her informed of the situation.

41.     Defendant failed to investigate Plaintiff's complaint of sex discrimination.

42.     On March 3, 2022, in a meeting with Duffy and Derry, Duffy stated that sixty (60) employees were interviewed by Day, and that more than one (1) person mentioned Plaintiff's "closeness" with O'Neill that led Day to question interviewees about her relationship with O'Neill and whether it was more than a work relationship.

43.     Duffy stated that other female employees have been in the same situation in the past.

44.     Duffy stated that Defendant did not substantiate the claim that O'Neill and Plaintiff had an inappropriate relationship.

45.     Plaintiff was asked who she thought started the rumors about allegedly having an inappropriate relationship with O'Neill, and Plaintiff responded that she did not know.

46.     Plaintiff stated to Duffy that she wondered if Patricia McGoldrick (female), Executive Director of Family Engagement and Philanthropy, had made the comments about her and O'Neill.

47.     McGoldrick had previously announced that Defendant needed more male members on its McNulty Advisory Board.

48.     On March 3, 2022, Plaintiff informed Marbot that McGoldrick had asked for more male members on its McNulty Advisory Board, and that McGoldrick had been dismissive and terse toward her.

49.     On March 4, 2022, Plaintiff told Derry that she had become aware that the position of Director of Family Engagement and Philanthropy would be posted soon, and that she was qualified for and interested in the position.

50.     Plaintiff expressed her concern to Derry that she would not be fairly evaluated, as the position reported to McGoldrick and McGoldrick had a history of being cold toward Plaintiff.

51.     On or about March 7, 2022, Plaintiff informed Noller that she had become aware that the Director of Family Engagement and Philanthropy position would be posted soon, and that she was qualified for and interested in the position.

52.     On March 7, 2022, Derry told Plaintiff early in her career at Defendant, rumors were spread about her having an affair with a male employee.

53.     Derry told Plaintiff that she still felt that people continued to think that she was having an affair with a male employee.

54.     Derry told Plaintiff that the most qualified candidate would be selected for the Director of Family Engagement and Philanthropy position.

55.     Derry stated that she was going to speak with Albert Baladez (male), Director of Employee Relations, about Plaintiff's situation and concerns.

56.     On March 7, 2022, as Plaintiff was standing in a hallway looking at her notebook, Patrick Gallagher (male), Director of Major Gifts College of Liberal Arts and Sciences, walked past her and commented: "What is that?  Your cheat sheet?"

57.     Plaintiff understood the "cheat" comment to be referencing her alleged inappropriate relationship with O'Neill.

58.     On March 8, 2022, Plaintiff informed Glackin of Gallagher's "cheat sheet" comment and her view that it was a reference to an alleged inappropriate relationship with O'Neil.

59.     Glackin responded, "Do you really think that's what he meant?  If so, I think you need to go to HR."

60.     On March 8, 2022, Plaintiff informed Derry and Duffy of Gallagher's "cheat sheet" comment and her view that it was a reference to an alleged inappropriate relationship with O'Neill.

61.     On March 9, 2022, Derry told Plaintiff that if she wanted the Director of Family Engagement and Philanthropy position, she should apply for it.  Derry told Plaintiff that the issue with McGoldrick was an issue that Noller would have to handle.

62.     On or about March 15, 2022, Plaintiff asked Noller whether she would be fairly evaluated in her application for the Director of Family Engagement and Philanthropy position, considering what was said about her alleged inappropriate relationship with O'Neill and considering that the position reported to McGoldrick.

63.     Noller responded that these were good questions and asked Plaintiff if she really wanted the position, due to the issues between McGoldrick and her.

64.     Plaintiff told Noller that she wanted the position.  Plaintiff further told Noller that it was important to her to ensure that the selection process would be fair since she would be assessed by colleagues and a hiring manager who may have previously made sexist comments.

65.     Plaintiff requested mediation with McGoldrick to ensure that there were no issues between them that would prevent her from being fairly evaluated for the Director of Family Engagement and Philanthropy position.  Noller stated that he would get back to Plaintiff.

66.     On March 23, 2022, Plaintiff received a "Highly Successful" performance review rating.

67.     On March 30, 2022, Plaintiff applied for the posted Director of Family Engagement and Philanthropy position.

68.     Plaintiff was qualified for the position.

69.    The hiring manager for the Director of Family Engagement and Philanthropy position was McGoldrick.

70.    McGoldrick reported to Noller.

71.    On April 7, 2022, Plaintiff told Noller that she applied for the Director of Family Engagement and Philanthropy position, and stated that she had questions "related to the selection of panelists that would be interviewing [her] and how there are checks & balances to help protect that those assessing [her] aren't the same people who said slanderous sexist things against [her] during the UA investigation."

72.    On April 7, 2022, Noller responded, "From a next steps standpoint, it isn't uncommon for postings to be open for a number of weeks before any action is taken so this timeline is still on track."

73.    On April 20, 2022, Plaintiff interviewed for the Director of Family Engagement and Philanthropy position with Marbot, Mary Cunningham (female), Executive Director of Prospect Development, and Ramon Guzman (male), Major Gift Officer, College of Liberal Arts and Sciences.

74.    On April 20, 2022, following the above, Plaintiff interviewed for the Director of Family Engagement and Philanthropy position with Gallagher and Susan McDonnell (female), Executive Director of Stewardship.

75.    On May 4, 2022, in a meeting with Noller and Baladez, Defendant failed to promote Plaintiff to the Director of Family Engagement and Philanthropy position.

76.    When Plaintiff asked if Defendant could explain its process, Baladez responded that, when Defendant considers internal candidates, it assesses mutual fit and, in Plaintiff's case, determined that it would not work.

77.    Baladez stated that, with internal candidates, Defendant sought more than just skillset, and sought a "fit" for the team.

78.    Noller stated that, in the last few weeks, he had begun to question Plaintiff's "readiness to be a manager."  Noller stated that Plaintiff had approached the job opportunity "in a retaliatory way, and it look[ed] very retaliatory on [her] part."

79.    Baladez asked Plaintiff why she wanted the position, considering that she would have been reporting to McGoldrick.

80.    Plaintiff understood this to mean that her sex discrimination complaints regarding McGoldrick were being used against her in the hiring process.

81.    Plaintiff responded that these Director positions were rarely open, and she wanted the opportunity to advance and grow her career at Defendant.  Plaintiff further stated that she did not understand why it would be out of the question for her to report to McGoldrick.

82.    Baladez informed Plaintiff that McGoldrick was aware of Plaintiff questioning whether she would be evaluated fairly for the Director of Family Engagement and Philanthropy position.

83.    Plaintiff stated that she was concerned because of the sexist comments that were made about her.

84.    Baladez responded that what was said about her was not that bad.

85.    Instead of promoting Plaintiff, Defendant selected Joshua Foster (male), an external candidate.

86.    Plaintiff was more qualified for the Director of Family Engagement and Philanthropy position than Foster.

87.     On June 17, 2022, Guzman told Plaintiff that he had selected her as the candidate to move forward for the Director of Family Engagement and Philanthropy position, but he had been overruled.  Guzman told Plaintiff that, when he shared his opinion about Plaintiff with McGoldrick on April 27, 2022, she was not pleased to hear the same and criticized Plaintiff. Guzman stated that McGoldrick was looking to hire a male candidate because Defendant had not had any males on that team before and a male employee would round out the team.

88.     On June 27, 2022, Plaintiff went out of work on a medical leave of absence due to the sex discrimination and retaliation to which she was subjected by Defendant.

89.     On August 11, 2022, Plaintiff resigned from her employment with Defendant.

90.     Defendant's discriminatory and retaliatory treatment of Plaintiff as set forth herein was sufficiently severe and/or pervasive such that a reasonable person in Plaintiff's position would have found the terms and conditions of employment to have been altered and the work environment created as a result thereof to be hostile and abusive.

91.     Defendant's treatment of Plaintiff as set forth in the preceding paragraph was sufficiently severe and/or pervasive such that Plaintiff in fact believed the terms and conditions of her employment had changed and that the work environment created as a result thereof had become hostile and abusive.

92.     Plaintiff resigned from her employment with Defendant due to the severity of the sex discrimination and retaliation to which she had been subjected and the emotional distress to which she had been subjected as a result of the same.

93.     Plaintiff's sex and her complaint of sex discrimination were each determinative and/or motivating factors in Defendant's discriminatory and retaliatory treatment of her, including

11

subjecting her to a hostile work environment and failing to promote her to the Director of Family Engagement and Philanthropy position.

94.     As a direct and proximate result of the discriminatory and retaliatory conduct of Defendant, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

## COUNT I – Title VII

95.     Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

96.     By committing the foregoing acts of discrimination and retaliation, Defendant has violated Title VII.

97.     Defendant acted with malice and/or reckless indifference toward the federally protected rights of Plaintiff and its conduct warrants the imposition of punitive damages.

98.     As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

99.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until the Court grants the relief requested herein.

100.     No previous application has been made for the relief requested herein.

## COUNT II – PHRA

101.     Plaintiff incorporates herein by reference the above paragraphs as if set forth herein

in their entirety.

102.    By committing the foregoing acts of discrimination and retaliation, Defendant has violated the PHRA.

103.    As a direct and proximate result of Defendant's violations of the PHRA, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

104.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

105.    No previous application has been made for the relief requested herein.

<u>**RELIEF**</u>

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendant's unlawful conduct, and specifically prays that this Court grant the following relief to Plaintiff by:

(a)    declaring the acts and practices complained of herein to be in violation of Title VII;

(b)    declaring the acts and practices complained of herein to be in violation of the PHRA;

(c)    enjoining and permanently restraining the violations alleged herein;

(d)    entering judgment against Defendant and in favor of Plaintiff in an amount to be determined;

(e)    awarding damages to make Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendant's unlawful conduct;

(f)     awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendant's unlawful conduct;

(g)     awarding punitive damages to Plaintiff under Title VII.

(h)     awarding Plaintiff such other damages and relief as is appropriate under the statutes that form the basis of this matter.

(i)     awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and

(j)     granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

**CONSOLE MATTIACCI LAW LLC**

Dated: May 4, 2023                By:     _/s/Daniel S. Orlow, Esq._
                                          Daniel S. Orlow, Esquire
                                          1525 Locust St., Ninth Floor
                                          Philadelphia, PA 19102
                                          (215) 545-7676
                                          (215) 545-8211
                                          Attorneys for Plaintiff Amy Galette

# Exhibit "1"

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

## <u>COMPLAINT</u>

COMPLAINANT:                    :
                                :
**AMY GALETTE**                 :          Docket No.
                                :
v.                              :
                                :
RESPONDENT:                     :
                                :
**VILLANOVA UNIVERSITY**        :
                                :

1. The Complainant herein is:

   Name:              <u>Amy Galette</u>

   Address:           ████████████████
                      Conshohocken, PA 19428

2. The Respondent herein is:

   Name:              <u>Villanova University</u>

   Address:           800 Lancaster Avenue
                      Villanova, PA 19085

3. I, <u>Amy Galette</u>, the Complainant herein, allege that I was subjected to unlawful

discrimination because of my sex (female), and retaliation because of my complaints of sex

discrimination, as set forth below.

### <u>Discrimination and Retaliation</u>

   **A. I specifically allege:**

   [1]        I was first hired by Respondents on or about February 25, 2008.

   [2]        I am a current employee of Respondents.

[3]     I consistently performed my job duties in a highly competent manner and receive positive feedback.

[4]     I hold the position of Major Gifts Officer.

[5]     I report to Brendan Glackin (male), Director of Major Gifts.  Glackin reports to Kevin Noller (male), Associate Vice President for Major Gifts.  Noller reports to Peter Donahue (male), President.

[6]     In or about March 2019, I began reporting to Glackin.

[7]     I am the only female employee reporting to Glackin.

[8]     In March 2021, I received a "Highly Successful" performance review rating.

[9]     On January 26, 2022, in an email from Ray Duffy (male), Associate Vice President of Human Resources, titled, "University Advancement Climate Audit," he stated that there would be an investigation to gather positive and negative feedback as Respondent embarked on a new fundraising campaign.  He stated that "a random sample of staff at all levels" would be contacted to schedule one-on-one feedback session with Kelly Day (female), the external investigator, and anyone who was not randomly selected was also invited to participate by contacting Day directly.

[10]     On February 7, 2022, I met with Day and answered her questions regarding the University Advancement ("UA") department.  Day then asked me whether I had ever spent time alone with Michael O'Neill (male), Senior Vice President.  I told her yes, and she did not ask for any details or examples.

[11]     At no time did I did have a sexual or otherwise inappropriate relationship with O'Neill.

[12]     On March 1, 2022, in a conversation with Julie Morrison (female), Executive Director of Special Events, she told me that, during her meeting with Day, she was asked about the nature of my relationship with O'Neill.  She told me that she was asked about times that she saw O'Neill and me together, whether she had seen O'Neill treat me differently, and whether she knew of times when O'Neill and I may have been alone together outside of work.

[13]     I was offended by the false statements and implications, which I believed were because of my sex.

[14]     On March 1, 2022, following the above, in a meeting with Glackin, I told him about my conversation with Morrison, including that, during her meeting with Day, Morrison was asked about the nature of my relationship with O'Neill.  I stated that I was extremely upset that it was being implied that I had an inappropriate relationship with O'Neill, as this was false.

[15]     On March 1, 2022, following the above, in a meeting with Noller, I told him about my conversation with Morrison, including that, during her meeting with Day, Morrison was asked about the nature of my relationship with O'Neill.  I stated that I was extremely upset that it was being implied that I had an inappropriate relationship with O'Neill, as this was false.  Noller told me that he, too, was asked questions about my relationship with O'Neill.  After I left his office, Noller told me that he called Duffy and told him about the line of questioning regarding my relationship with O'Neill, and told Duffy that I was upset about the same.  Noller told me that Duffy stated that I could reach out to Duffy if I wanted to discuss my concerns.

[16]     On March 1, 2022, following the above, in an email to Duffy and Jen
Derry (female), Assistant Vice President of Human Resources, I stated the following: "After
connecting with Kevin Noller just now, I understand that you'd welcome a conversation based
on the fact that a colleague informed me of a line of questioning that was suggestive of a
relationship involving myself and Mike O'Neill that could have crossed professional and
platonic lines. . . . I am rather upset learning that a colleague of mine was openly asked a line of
questioning which would have suggested involvement between Mike [O'Neill] and me spanning
outside a professional and friendly relationship. I feel let down and I'd like to discuss this with
you or a member of your team to help me understand how this was OK and how I'm not
supposed to think that these false statements may negatively impact my reputation which I've
built since 2008. Especially since I presume Kelly asked more than just one person (and yet
somehow this did not come up in my own line of questioning with her)."

[17]     On March 1, 2022, following the above, in a text message to Emily
Marbot (female), Director of Talent Management, I told her that I wanted to speak with her
regarding an issue that was "highly sensitive." I told her that I had sent an email to Human
Resources about the issue, and shared the above email with her.

[18]     On March 1, 2022, following the above, in a phone call with Marbot, I
complained of sex discrimination. I stated that, because I am a woman who had a positive
working relationship with O'Neill, there were rumors being spread that I had an inappropriate
relationship with him, my superior. Marbot asked me to keep her informed of the situation.

[19]     On March 3, 2022, in a meeting with Duffy and Derry, Duffy stated that
sixty (60) employees were interviewed by Day, and that, after I spoke with Day, more than one
(1) person mentioned my "closeness" with O'Neill that led Day to question interviewees about

our relationship and whether it was more than a work relationship. Duffy stated that other female employees have been in the same situation in the past. Duffy stated that Respondent did not substantiate the claim that O'Neill and I had an inappropriate relationship. I was asked who I thought started the rumors about my allegedly having an inappropriate relationship with O'Neill, and I responded that I did not know, but I had wondered if Patricia McGoldrick (female), Executive Director of Family Engagement and Philanthropy, had made these comments about me, as she had been cold toward me.

[20]     McGoldrick had previously announced that Respondent needed more male members on its McNulty Advisory Board.

[21]     Respondent failed to investigate my sex discrimination complaint.

[22]     Respondent failed to take any action or remedy or prevent the sex discrimination against me.

[23]     On March 3, 2022, in an email to Marbot, I told her that McGoldrick had asked for more male members on its McNulty Advisory Board, and that McGoldrick had been dismissive and terse toward me.

[24]     On March 4, 2022, in an email to Derry, I stated that I had become aware that the Director of Family Engagement and Philanthropy position would be posted soon, and that I was qualified for and interested in the position. I expressed my concern that I would not be fairly evaluated, as the position reported to McGoldrick and McGoldrick had a history of being cold toward me.

[25]     On or about March 7, 2022, in a meeting with Noller, I stated that I had become aware that the Director of Family Engagement and Philanthropy position would be posted soon, and that I was qualified for and interested in the position.

[26]    On March 7, 2022, in a meeting with Derry, she told me that, early in her career at Respondent, rumors were spread about her having an affair with a male employee. She told me that she still felt that, when she walked into certain meetings, people continued to think that she was having an affair with a male employee. Derry told me that the most qualified candidate would be selected for the Director of Family Engagement and Philanthropy position. Derry stated that she was going to speak with Albert Baladez (male), Director of Employee Relations, about my situation and concerns.

[27]    On March 8, 2022, as I was standing in a hallway looking at my notebook, Patrick Gallagher (male), Director of Major Gifts College of Liberal Arts and Sciences, walked past me and commented to me: "What is that? Your cheat sheet?" I understood the "cheat" comment to be referencing my alleged inappropriate relationship with O'Neill.

[28]    On March 8, 2022, following the above, in a text message to Glackin, I stated that Gallagher walked past me and commented to me: "What is that? Your cheat sheet?" I stated that this was hard.

[29]    On March 8, 2022, following the above, in a text message from Glackin, he asked and stated: "Do you really think that's what he meant? If so I think you need to go to HR."

[30]    On March 8, 2022, following the above, in an email to Derry and Duffy, I stated that Gallagher walked past me and commented to me: "What is that? Your cheat sheet?" I stated that this was hard.

[31]    I received no response to my above email.

[32]     On March 9, 2022, in a phone call with Derry, she stated that, if I wanted the Director of Family Engagement and Philanthropy position, I should apply for it.  She told me that the issue with McGoldrick was an issue that Noller would have to handle.

[33]     On or about March 15, 2022, in a meeting with Noller, I asked whether I would be fairly evaluated in my application for the Director of Family Engagement and Philanthropy position, considering what was said about my alleged inappropriate relationship with O'Neill and considering that the position reported to McGoldrick.  He responded that these were good questions.  Noller asked me if I really wanted the position, due to the issues between McGoldrick and me.  I responded that I did.  I stated that it was important to me to ensure that the selection process would be fair since I would be assessed by colleagues and a hiring manager who may have said sexist things about me.  I requested mediation with McGoldrick to ensure that there were no issues between us that would prevent me from being selected for the Director of Family Engagement and Philanthropy position.  Noller stated that he would get back to me.

[34]     On March 23, 2022, I received a "Highly Successful" performance review rating.

[35]     On March 30, 2022, I applied for the posted Director of Family Engagement and Philanthropy position.  I was qualified for the position.  The position would have been a promotion for me.

[36]     The hiring manager for the Director of Family Engagement and Philanthropy position was McGoldrick.  McGoldrick reports to Noller.

[37]     On April 7, 2022, in an email to Noller, I told him that I applied for the Director of Family Engagement and Philanthropy position, and stated that I had questions "related to the selection of panelists that would be interviewing me and how there are checks &

balances to help protect that those assessing me aren't the same people who said slanderous sexist things against me during the UA investigation."

[38]     On April 7, 2022, in a response email from Noller, he stated the following: "From a next steps standpoint, it isn't uncommon for postings to be open for a number of weeks before any action is taken so this timeline is still on track."

[39]     On April 20, 2022, I interviewed for the Director of Family Engagement and Philanthropy position with Marbot, Mary Cunningham (female), Executive Director of Prospect Development, and Ramon Guzman (male), Major Gift Officer, College of Liberal Arts and Sciences.

[40]     On April 20, 2022, following the above, I interviewed for the Director of Family Engagement and Philanthropy position with Gallagher and Susan McDonnell (female), Executive Director of Stewardship.

[41]     On May 4, 2022, in a meeting with Noller and Baladez, Respondent failed to promote me.  The stated reason was that Respondent was not advancing me to the next round of interviews and was looking to hire an external candidate.  When I asked if they could explain their process, Baladez responded that, when Respondent considers internal candidates, it assesses mutual fit and, in my case, Respondent determined that it would not work.  He stated that, with internal candidates, Respondent sought more than just skillset, and sought a "fit" for the team. Noller stated that, in the last few weeks, he had begun to question my "readiness to be a manager."  Noller stated that I had approached the job opportunity "in a retaliatory way, and it look[ed] very retaliatory on [my] part."  I understood this to mean that Respondents were admitting that my engaging in protected activity was being used against me.  I stated that I had wanted to ensure that I would be evaluated fairly for the promotion opportunity.  Baladez asked

me why I wanted the position, considering that I would have been reporting to McGoldrick. I understood this to mean that my sex discrimination complaints regarding McGoldrick were being used against me in the hiring process. I responded that these Director positions were rarely open, and I wanted the opportunity to advance and grow my career at Respondent. I stated that I did not understand why it would be out of the question for me to report to McGoldrick, and stated that I was able to move forward in a positive direction. I believed that McGoldrick's refusal to meet with me or interview me was retaliatory based on my sex discrimination complaint. Baladez asked me why I thought McGoldrick made comments about my having an inappropriate relationship with O'Neill. I stated that McGoldrick had been cold toward me and had made other relationship-oriented comments in past, for example, comparing Noller to an "ex-boyfriend" that continued to be in her life, and her falling out with Noller being like a "divorce." Baladez stated that someone had told McGoldrick that I had questioned whether I would be evaluated fairly for the Director of Family Engagement and Philanthropy position. Noller added that McGoldrick was livid, and she would not meet with me. I stated that I was concerned because of the sexist comments that were made about me. Baladez responded that what was said about me was not that bad.

[42]     Instead of promoting me, Respondent selected Joshua Foster (male), an external candidate. I was more qualified for the Director of Family Engagement and Philanthropy position than the external, noncomplaining, male candidate who Respondent selected instead of me.

[43]     Respondent failed to promote me because of my sex and/or my sex discrimination complaints.

[44]     Respondent subjected me to a hostile work environment because of my sex and/or my sex discrimination complaints.

[45]     I have had no disciplinary or performance issues throughout my employment with Respondents.

[46]     On June 17, 2022, in a phone call with Guzman, he told me that he had selected me as the candidate to move forward for the Director of Family Engagement and Philanthropy position, but he had been overruled.  He told me that, when he shared his opinion about me with McGoldrick on April 27, 2022, she was not pleased to hear the same and criticized me.  Guzman told me that McGoldrick told him that she was looking to hire a male candidate because Respondent had not had any males on that team before and a male employee would round out the team.

[47]     On June 27, 2022, I went out of work on a medical leave of absence due to the sex discrimination and retaliation to which I have been subjected by Respondent.

[48]     I remain on a medical leave of absence.

[49]     Respondent's conduct and comments evidence a bias against female and/or complaining employees.

[50]     Respondent recently demoted and/or pushed out and/or terminated female employees and/or compensated female employees less than male employees, including the following: Sarah Hutchinson (female), Major Gifts Officer, Family Engagement and Philanthropy, who had reported to McGoldrick; Casey Heilig (female), Director of Family Engagement and Philanthropy, who had reported to McGoldrick; Grace Rodier (female), Major Gifts Officer, College of Engineering; Rose Laden (female), Executive Director for Alumni

Relations; Patricia Grande (female), University Advancement as Administrative Assistant II; and Priya Mohan (female), Director of Major Giving.

[51]     Respondents' sex discrimination and retaliation against me has caused me emotional distress.

**B.**  Based on the aforementioned, I allege that Respondents have discriminated against me because of my sex (female), and retaliated against me because of my complaints of sex discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA").

4.     The allegations in Paragraph 3 hereof constitute unlawful discriminatory practices in violation of:

   **X**     **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s):**   **(a); (d)**

\_\_\_\_     Section 5.1 Subsection(s) _____

\_\_\_\_     Section 5.2 Subsection(s) _____

\_\_\_\_     Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961, P.L. 766, as amended) Section 4 Subsection(s) _____

5.     Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

   **X**     **This charge will be referred to the EEOC for the purpose of dual filing.**

6.     The Complainant seeks that Respondents be required to:

(a) Make the Complainant whole.

(b) Eliminate all unlawful discriminatory practice(s) and procedure(s).

(c) Remedy the discriminatory effect of past practice(s) and procedure(s).

(d) Take further affirmative action necessary and appropriate to remedy the violation complained of herein.

(e) Provide such further relief as the Commission deems necessary and appropriate.

## <u>VERIFICATION</u>

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

7/5/2022
_____
(Date Signed)

_____
(Signature)   Amy Galette

Conshohocken, PA 19428

Exhibit "2"

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Philadelphia District Office
801 Market St, Suite 1000
Philadelphia, PA 19107
(267) 589-9700
Website: www.eeoc.gov

## <u>DETERMINATION AND NOTICE OF RIGHTS</u>

(This Notice replaces EEOC FORMS 161 & 161-A)

**To:**   Amy Galette
▮▮▮▮▮▮▮▮▮▮
Conshohocken, PA 19428

**Re:**   Amy Galette v. Villanova University
EEOC Charge Number:  17F-2022-61122

EEOC Representative and email:    State Local and Tribal Program Manager
PHLSTATEANDLOCAL@EEOC.GOV

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) received this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

Please retain this notice for your records.

On Behalf of the Commission:

Digitally Signed By: Karen McDonough 2/7/2023

Karen McDonough
Deputy District Director

cc:      For Respondent                              For Charging Party

Hedya Aryani                                Emily R. Derstine Friesen, Esq.
Associate General Counsel                    Console Mattiacci Law, LLC
Villanova University                          1525 Locust Street, 9th Floor
800 Lancaster Avenue                         Philadelphia, PA 19102
Villanova, PA 19085

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) received the document. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.