**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **AMY GALETTE,**<br>Plaintiff,<br>vs.<br>**VILLANOVA UNIVERSITY,**<br>Defendant. | CIVIL ACTION NO.<br>2:23-CV-01714-KSM |

**DEFENDANT VILLANOVA UNIVERSITY'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF AMY GALETTE'S COMPLAINT**

Defendant Villanova University ("Villanova"), by and through its undersigned counsel, respectfully submits its Answer and Affirmative Defenses to Plaintiff Amy Galette's ("Galette") Complaint as follows:

## I. INTRODUCTION[1]

Plaintiff, Amy Galette, brings this action against her former employer, Villanova University ("Defendant").

Plaintiff, a long-serving and dedicated employee of Defendant, was subjected to a sex-based stereotype that her positive relationship with a higher-ranking male co-worker implied a romantic relationship. After Plaintiff complained of the discriminatory stereotyping to which she was subjected, she was denied a promotion for which she was highly qualified. Defendant failed to adequately investigate Plaintiff's complaint of discrimination, leading to her resignation in August of 2022.

[1] Defendant incorporates the headings used by Plaintiff in her Complaint only for convenience to the Court and without admitting the allegations contained therein.

Defendant engaged in discriminatory and retaliatory conduct towards Plaintiff in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"). Plaintiff seeks all damages allowable under law, including back pay, front pay, compensatory damages, punitive damages, and attorney's fees and costs.

**ANSWER:** Admitted in part; denied in part. It is admitted that Plaintiff brings this action against her former employer, that Plaintiff resigned in August of 2022, and that Plaintiff's Complaint purports to seek damages. The remaining allegations in this paragraph are conclusions of law to which no response is required. To the extent a response is required, the allegations are denied. To the contrary, Villanova did not unlawfully discriminate or retaliate against Plaintiff.

## II. PARTIES

1. Plaintiff, Amy Galette, is an individual and a citizen of the Commonwealth of Pennsylvania, residing therein in Conshohocken, Pennsylvania.

**ANSWER:** Admitted.

2. Plaintiff is female.

**ANSWER:** Admitted.

3. Defendant is organized under the laws of the Commonwealth of Pennsylvania and maintains a principal place of business at 800 Lancaster Avenue, Villanova, PA 19085.

**ANSWER:** Admitted.

4. Defendant is engaged in an industry affecting interstate commerce and regularly does business in the Commonwealth of Pennsylvania.

**ANSWER:** The allegations in this paragraph are conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

5. At all times material hereto, Defendant employed more than fifteen (15) employees.

**ANSWER:** Admitted.

6. At all times material hereto, Defendant acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

**ANSWER:** The allegations in this paragraph are conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

7. At all times material hereto, Defendant acted as an employer within the meaning of the statutes which form the basis of this matter.

**ANSWER:** The allegations in this paragraph are conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

8. At all times material hereto, Plaintiff was an employee of Defendant within the meaning of the statutes which form the basis of this matter.

**ANSWER:** The allegations in this paragraph are conclusions of law to which no response is required. To the extent a response is required, the allegations are denied as stated and Villanova admits only that it employed Ms. Galette.

## III. JURISDICTION AND VENUE

9. The causes of action which form the basis of this matter arise under Title VII and the PHRA.

**ANSWER:** The allegations in this paragraph are conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

10. The District Court has jurisdiction over Count I (Title VII) pursuant to 42 U.S.C. § 2000e-5 and 28 U.S.C. § 1331.

**ANSWER:** The allegations in this paragraph are conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

11. The District Court has supplemental jurisdiction over Count II (PHRA) pursuant to 28 U.S.C. § 1367.

**ANSWER:** The allegations in this paragraph are conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

19.[2] Venue is proper in the District Court under 28 U.S.C. §1391(b) and 42 U.S.C. § 2000(e)-5(f).

**ANSWER:** The allegations in this paragraph are conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

20. On or about July 5, 0222, Plaintiff filed a Complaint of Discrimination with the Pennsylvania Human Relations Commission ("PHRC"), complaining of the acts of discrimination and retaliation alleged herein. This Complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). Attached hereto, incorporated herein, and marked as Exhibit "1" is a true and correct copy of the PHRC Complaint of Discrimination (with personal identifying information redacted).

**ANSWER:** Admitted. By way of further response, the PHRC investigated Plaintiff's complaint and found there was insufficient evidence to establish discrimination. The EEOC adopted the findings of the PHRC. A redacted copy of the PHRC's decision is attached hereto as Exhibit A and a copy of the EEOC's letter adopting the findings of the PHRC is attached hereto as Exhibit B.

---

[2] The paragraphs of Plaintiff's Complaint are not sequential; however, Villanova has followed Plaintiff's numbering for consistency purposes and to avoid any confusion.

21. On or about February 7, 2023 the EEOC issued to Plaintiff a Notice of Right to Sue for her Complaint of Discrimination. Attached hereto, incorporated herein, and marked as Exhibit "2" is a true and correct copy of the Notice of Right to Sue (with personal identifying information redacted).

**ANSWER:** Admitted. By way of further response, the EEOC adopted the findings of the PHRC, which found that there was insufficient evidence to establish discrimination.

22. Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

**ANSWER:** The allegations in this paragraph are conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

## IV. FACTUAL ALLEGATIONS

23. Plaintiff was initially hired by Defendant on or about February 25, 2008.

**ANSWER:** Admitted.

22. At all relevant times, Plaintiff held the position of Major Gifts Officer.

**ANSWER:** Admitted that Plaintiff held the position of Major Gifts Officer, though Defendant does not know what Plaintiff considered the "relevant times."

24. In or about March 2019, Plaintiff began reporting to Brendan Glackin (male), Director of Major Gifts.

**ANSWER:** Admitted.

25. Glackin reported to Kevin Noller (male), Associate Vice President for Major Gifts.

**ANSWER:** Admitted.

26. In March 2021, Plaintiff received a "Highly Successful" performance review rating.

**ANSWER:** It is admitted only that the overall rating on Plaintiff's March 2021 performance review was "Highly Successful"; however, the performance review also addressed areas for her improvement.

27. On January 26, 2022, in an email from Ray Duffy (male), Associate Vice President of Human Resources, he stated that there would be an investigation to gather positive and negative feedback as Defendant embarked on a new fundraising campaign. He stated that "a random sample of staff at all levels" would be contacted to schedule a one-on-one feedback session with Kelly Day (female), an external investigator, and anyone who was not randomly selected was also invited to participate by contacting Day directly.

**ANSWER:** Admitted only that Raymond Duffy is the Associate Vice President of Human Resources, and that Mr. Duffy sent the referenced January 26, 2022 email. Plaintiff's description of the January 26, 2022 email is denied, as that document speaks for itself.

28. On February 7, 2022, Plaintiff met with Day and answered her questions regarding the University Advancement ("UA") department.

**ANSWER:** This paragraph contains allegations regarding a privileged climate audit conducted by outside counsel to Villanova, and the answer to those allegations is privileged. Without waiver of any privilege, it is admitted only that Villanova retained outside counsel to conduct a privileged climate audit of the Office of University Advancement; that any questions asked during the audit were appropriate to investigate allegations of inappropriate conduct; and that Plaintiff faced no adverse action.[3]

[3] Even taking all of Plaintiff's allegations in the Complaint concerning the privileged climate audit as true, as a matter of law any questions asked during a privileged climate survey could not constitute discrimination on the basis of sex.

29. Day asked Plaintiff whether she had ever spent time alone with Michael O'Neill (male), Senior Vice President.

**ANSWER:** This paragraph contains allegations regarding a privileged climate audit conducted by outside counsel to Villanova, and the answer to those allegations is privileged. Without waiver of any privilege, it is admitted only that Villanova retained outside counsel to conduct a privileged climate audit of the Office of University Advancement; that any questions asked during the audit were appropriate to investigate allegations of inappropriate conduct; and that Plaintiff faced no adverse action.

30. Plaintiff responded that she had, and Day did not ask for any details or examples.

**ANSWER:** This paragraph contains allegations regarding a privileged climate audit conducted by outside counsel to Villanova, and the answer to those allegations is privileged. Without waiver of any privilege, it is admitted only that Villanova retained outside counsel to conduct a privileged climate audit of the Office of University Advancement; that any questions asked during the audit were appropriate to investigate allegations of inappropriate conduct; and that Plaintiff faced no adverse action.

31. At no time did Plaintiff have a sexual or otherwise inappropriate relationship with O'Neill.

**ANSWER:** Villanova lacks sufficient information to form a belief as to the truth of the allegations in this paragraph and the allegations are therefore denied.

32. On March 1, 2022, Julie Morrison (female), Executive Director of Special Events, told Plaintiff that during her meeting with Day she was asked about the nature of Plaintiff's relationship with O'Neill.

**ANSWER:** It is admitted only that Julie Morrison is the Executive Director of Special Events in the Office of University Advancement, and that Plaintiff improperly discussed the privileged climate audit with other employees, including Ms. Morrison. The remaining allegations in this paragraph contain allegations regarding a privileged climate audit conducted by outside counsel to Villanova, and the answer to those allegations is privileged. Without waiver of any privilege, it is admitted only that Villanova retained outside counsel to conduct a privileged climate audit of the Office of University Advancement; that any questions asked during the audit were appropriate to investigate allegations of inappropriate conduct; and that Plaintiff faced no adverse action.

33. Morrison told Plaintiff that she was asked about times that she saw O'Neill and Plaintiff together, whether she had seen O'Neill treat Plaintiff differently, and whether she knew of times when O'Neill and Plaintiff may have been alone together outside of work.

**ANSWER:** It is admitted only that Plaintiff improperly discussed the privileged climate audit with other employees, including Ms. Morrison. The remaining allegations in this paragraph contain allegations regarding a privileged climate audit conducted by outside counsel to Villanova, and the answer to those allegations is privileged. Without waiver of any privilege, it is admitted only that Villanova retained outside counsel to conduct a privileged climate audit of the Office of University Advancement; that any questions asked during the audit were appropriate to investigate allegations of inappropriate conduct; and that Plaintiff faced no adverse action.

34. On March 1, 2022, following the above, Plaintiff told Glackin about her conversation with Morrison. Plaintiff explained that she was upset that it was implied that she had an inappropriate relationship with O'Neill.

**ANSWER:** It is admitted only that Plaintiff improperly discussed the privileged climate audit with other employees, including Mr. Glackin. The remaining allegations in this paragraph contain allegations regarding a privileged climate audit conducted by outside counsel to Villanova, and the answer to those allegations is privileged. Without waiver of any privilege, it is admitted only that Villanova retained outside counsel to conduct a privileged climate audit of the Office of University Advancement; that any questions asked during the audit were appropriate to investigate allegations of inappropriate conduct; and that Plaintiff faced no adverse action.

35. On March 1, 2022, following the above, Plaintiff told Noller about her conversation with Morrison. Plaintiff explained that she was extremely upset that it was implied that she had an inappropriate relationship with O'Neill.

**ANSWER:** It is admitted only that Plaintiff improperly discussed the privileged climate audit with other employees, including Mr. Noller. The remaining allegations in this paragraph contain allegations regarding a privileged climate audit conducted by outside counsel to Villanova, and the answer to those allegations is privileged. Without waiver of any privilege, it is admitted only that Villanova retained outside counsel to conduct a privileged climate audit of the Office of University Advancement; that any questions asked during the audit were appropriate to investigate allegations of inappropriate conduct; and that Plaintiff faced no adverse action.

36. Noller told Plaintiff that he, too, was asked questions about her relationship with O'Neill.

**ANSWER:** It is admitted only that Plaintiff improperly discussed the privileged climate audit with other employees, including Mr. Noller. The remaining allegations in this paragraph

contain allegations regarding a privileged climate audit conducted by outside counsel to Villanova, and the answer to those allegations is privileged. Without waiver of any privilege, it is admitted only that Villanova retained outside counsel to conduct a privileged climate audit of the Office of University Advancement; that any questions asked during the audit were appropriate to investigate allegations of inappropriate conduct; and that Plaintiff faced no adverse action.

37. On March 1, 2022, following the above, in an email to Duffy and Jen Derry (female), Assistant Vice President of Human Resources, Plaintiff stated the following: "After connecting with Kevin Noller just now, I understand that you'd welcome a conversation based on the fact that a colleague informed me of a line of questioning that was suggestive of a relationship involving myself and Mike O'Neill that could have crossed professional and platonic lines. . . . I am rather upset learning that a colleague of mine was openly asked a line of questioning which would have suggested involvement between Mike [O'Neill] and me spanning outside a professional and friendly relationship. I feel let down and I'd like to discuss this with you or a member of your team to help me understand how this was OK and how I'm not supposed to think that these false statements may negatively impact my reputation which I've built since 2008. Especially since I presume Kelly asked more than just one person (and yet somehow this did not come up in my own line of questioning with her)."

**ANSWER:** It is admitted only that on March 1, 2022, Plaintiff emailed Mr. Duffy and Jennifer Derry (Assistant Vice President of Human Resources). Plaintiff's description of the March 1, 2022 email is denied, as that document speaks for itself. In addition, the remaining allegations in this paragraph relate to a privileged climate audit conducted by outside counsel to Villanova, and the answer to those allegations is privileged. Without waiver of any privilege, it

is admitted only that Villanova retained outside counsel to conduct a privileged climate audit of the Office of University Advancement; that any questions asked during the audit were appropriate to investigate allegations of inappropriate conduct; and that Plaintiff faced no adverse action.

38. On March 1, 2022, following the above, Plaintiff informed Emily Marbot (female), Director of Talent Management, that she wanted to speak with her regarding an issue that was "highly sensitive." Plaintiff informed Marbot that she had sent an email to Human Resources about the issue, and shared her March 1, 2022 email to Duffy with Marbot.

**ANSWER:** Denied as stated. It is admitted only that Emily Marbot is the Director of Talent Management in the Office of University Advancement, and that Plaintiff and Ms. Marbot spoke via text on or around March 1, 2022. Plaintiff's description of the texts is denied, as the documents speak for themselves. In addition, to the extent that the remaining allegations in this paragraph relate to a privileged climate audit conducted by outside counsel to Villanova, the answer to those allegations is privileged. Without waiver of any privilege, it is admitted only that Villanova retained outside counsel to conduct a privileged climate audit of the Office of University Advancement; that any questions asked during the audit were appropriate to investigate allegations of inappropriate conduct; and that Plaintiff faced no adverse action.

39. On March 1, 2022, following the above, Plaintiff complained of sex discrimination to Marbot. Plaintiff stated that, because she is a woman who had a positive working relationship with O'Neill (her superior), there were rumors being spread that she had an inappropriate relationship with him.

**ANSWER:** Admitted in part; denied in part. It is admitted only that Emily Marbot is the Director of Talent Management for the Office of University Advancement, and that Plaintiff and

Ms. Marbot spoke on or around March 1, 2022 via telephone. By way of further response, Plaintiff speculated to Ms. Marbot that Patricia McGoldrick (Executive Director of Family Engagement and Philanthropy) was spreading rumors about Plaintiff based on a personal grudge. Plaintiff and Ms. McGoldrick had been close friends but had a falling out years prior to the alleged events. In addition, the remaining allegations in this paragraph relate to a privileged climate audit conducted by outside counsel to Villanova, and the answer to those allegations is privileged. Without waiver of any privilege, it is admitted only that Defendant retained outside counsel to conduct a privileged climate audit of the Office of University Advancement; that any questions asked during the audit were appropriate to investigate allegations of inappropriate conduct; and that Plaintiff faced no adverse action.

40. Marbot asked Plaintiff to keep her informed of the situation.

**ANSWER:** Villanova lacks sufficient information to form a belief as to the truth of the allegations in this paragraph and the allegations are therefore denied. In addition, to the extent that the remaining allegations in this paragraph relate to a privileged climate audit conducted by outside counsel to Villanova, the answer to those allegations is privileged. Without waiver of any privilege, it is admitted only that Villanova retained outside counsel to conduct a privileged climate audit of the Office of University Advancement; that any questions asked during the audit were appropriate to investigate allegations of inappropriate conduct; and that Plaintiff faced no adverse action.

41. Defendant failed to investigate Plaintiff's complaint of sex discrimination.

**ANSWER:** Denied. By way of further response, Plaintiff did not file a complaint of sex discrimination. However, when Plaintiff asked about her options for raising her "personal grudge" concerns regarding Ms. McGoldrick, Human Resources provided her with links to

Villanova's general Complaint Procedures for employees, and the Non-Discrimination and Non-Harassment Policies and Procedures.

42. On March 3, 2022, in a meeting with Duffy and Derry, Duffy stated that sixty (60) employees were interviewed by Day, and that more than one (1) person mentioned Plaintiff's "closeness" with O'Neill that led Day to question interviewees about her relationship with O'Neill and whether it was more than a work relationship.

**ANSWER:** It is admitted only that, on March 3, 2022, Plaintiff met with Mr. Duffy and Ms. Derry in Human Resources. The remaining allegations in this paragraph relate to a privileged climate audit conducted by outside counsel to Villanova, and the answer to those allegations is privileged. Without waiver of any privilege, it is admitted only that Villanova retained outside counsel to conduct a privileged climate audit of the Office of University Advancement; that any questions asked during the audit were appropriate to investigate allegations of inappropriate conduct; and that Plaintiff faced no adverse action.

43. Duffy stated that other female employees have been in the same situation in the past.

**ANSWER:** The allegations in this paragraph relate to a privileged climate audit conducted by outside counsel to Villanova, and the answer to those allegations is privileged. Without waiver of any privilege, it is admitted only that Villanova retained outside counsel to conduct a privileged climate audit of the Office of University Advancement; that any questions asked during the audit were appropriate to investigate allegations of inappropriate conduct; and that Plaintiff faced no adverse action.

44. Duffy stated that Defendant did not substantiate the claim that O'Neill and Plaintiff had an inappropriate relationship.

**ANSWER:** The allegations in this paragraph relate to a privileged climate audit conducted by outside counsel to Villanova, and the answer to those allegations is privileged. Without waiver of any privilege, it is admitted only that Villanova retained outside counsel to conduct a privileged climate audit of the Office of University Advancement; that any questions asked during the audit were appropriate to investigate allegations of inappropriate conduct; and that Plaintiff faced no adverse action.

45. Plaintiff was asked who she thought started the rumors about allegedly having an inappropriate relationship with O'Neill, and Plaintiff responded that she did not know.

**ANSWER:** The allegations in this paragraph relate to a privileged climate audit conducted by outside counsel to Villanova, and the answer to those allegations is privileged. Without waiver of any privilege, it is admitted only that Villanova retained outside counsel to conduct a privileged climate audit of the Office of University Advancement; that any questions asked during the audit were appropriate to investigate allegations of inappropriate conduct; and that Plaintiff faced no adverse action.

46. Plaintiff stated to Duffy that she wondered if Patricia McGoldrick (female), Executive Director of Family Engagement and Philanthropy, had made the comments about her and O'Neill.

**ANSWER:** The allegations in this paragraph relate to a privileged climate audit conducted by outside counsel to Villanova, and the answer to those allegations is privileged. Without waiver of any privilege, it is admitted only that Villanova retained outside counsel to conduct a privileged climate audit of the Office of University Advancement; that any questions asked during the audit were appropriate to investigate allegations of inappropriate conduct; and

that Plaintiff faced no adverse action. By way of further response, Plaintiff speculated that Ms. McGoldrick harbored ill-will towards her due to their personal falling out.

47. McGoldrick had previously announced that Defendant needed more male members on its McNulty Advisory Board.

**ANSWER:** Villanova lacks sufficient information to form a belief as to the truth of the allegations in this paragraph and the allegations are therefore denied.

48. On March 3, 2022, Plaintiff informed Marbot that McGoldrick had asked for more male members on its McNulty Advisory Board, and that McGoldrick had been dismissive and terse toward her.

**ANSWER:** It is admitted only that Plaintiff and Ms. Marbot spoke via email on March 3, 2022, and those emails speak for themselves. Any remaining allegations are denied.

49. On March 4, 2022, Plaintiff told Derry that she had become aware that the position of Director of Family Engagement and Philanthropy would be posted soon, and that she was qualified for and interested in the position.

**ANSWER:** It is admitted only that Plaintiff and Ms. Marbot spoke via email on March 4, 2022, and those emails speak for themselves. Any remaining allegations are denied.

50. Plaintiff expressed her concern to Derry that she would not be fairly evaluated, as the position reported to McGoldrick and McGoldrick had a history of being cold toward Plaintiff.

**ANSWER:** It is admitted only that Plaintiff and Ms. Marbot spoke via email on March 4, 2022, and those emails speak for themselves. Any remaining allegations are denied.

51. On or about March 7, 2022, Plaintiff informed Noller that she had become aware that the Director of Family Engagement and Philanthropy position would be posted soon, and that she was qualified for and interested in the position.

**ANSWER:** Admitted. By way of further response, before even applying for the Director of Family Engagement and Philanthropy position, Plaintiff told Ms. Noller (and others) that she was a shoo-in for the position, but speculated that the hiring manager, Ms. McGoldrick, was going to block her from the position due to a personal grudge.

52. On March 7, 2022, Derry told Plaintiff early in her career at Defendant, rumors were spread about her having an affair with a male employee.

**ANSWER:** It is admitted only that Plaintiff met with Ms. Derry on March 7, 2022. Villanova lacks sufficient information to form a belief as to the truth of the remaining allegations in this paragraph and the allegations are therefore denied.

53. Derry told Plaintiff that she still felt that people continued to think that she was having an affair with a male employee.

**ANSWER:** It is admitted only that Plaintiff met with Ms. Derry on March 7, 2022. Villanova lacks sufficient information to form a belief as to the truth of the remaining allegations in this paragraph and the allegations are therefore denied.

54. Derry told Plaintiff that the most qualified candidate would be selected for the Director of Family Engagement and Philanthropy position.

**ANSWER:** Admitted.

55. Derry stated that she was going to speak with Albert Baladez (male), Director of Employee Relations, about Plaintiff's situation and concerns.

**ANSWER:** Denied as stated. It is admitted only that Ms. Derry told Plaintiff that she would relay to Albert Baladez, Director of Employee Relations, Plaintiff's concerns related to not getting the job due to her personal falling out with the hiring manager, Ms. McGoldrick.

56. On March 7, 2022, as Plaintiff was standing in a hallway looking at her notebook, Patrick Gallagher (male), Director of Major Gifts College of Liberal Arts and Sciences, walked past her and commented: "What is that? Your cheat sheet?"

**ANSWER:** It is admitted only that Patrick Gallagher is the Director of Major Gifts for the College of Liberal Arts and Sciences. The remaining allegations in this paragraph are denied.

57. Plaintiff understood the "cheat" comment to be referencing her alleged inappropriate relationship with O'Neill.

**ANSWER**: Villanova lacks sufficient information to form a belief as to the truth of the allegations in this paragraph and the allegations are therefore denied.

58. On March 8, 2022, Plaintiff informed Glackin of Gallagher's "cheat sheet" comment and her view that it was a reference to an alleged inappropriate relationship with O'Neil.

**ANSWER:** It is admitted only that Plaintiff and Mr. Glackin spoke via text message on March 8, 2022. Plaintiff's description of the texts is denied, as they are documents that speak for themselves.

59. Glackin responded, "Do you really think that's what he meant? If so, I think you need to go to HR."

**ANSWER:** It is admitted only that Plaintiff and Mr. Glackin spoke via text message on March 8, 2022. Plaintiff's description of the texts is denied, as they are documents that speak for themselves.

60. On March 8, 2022, Plaintiff informed Derry and Duffy of Gallagher's "cheat sheet" comment and her view that it was a reference to an alleged inappropriate relationship with O'Neill.

**ANSWER:** It is admitted only that Plaintiff emailed Ms. Derry and Mr. Duffy on March 8, 2022. Plaintiff's description of the email is denied, as it is a document that speaks for itself.

61. On March 9, 2022, Derry told Plaintiff that if she wanted the Director of Family Engagement and Philanthropy position, she should apply for it. Derry told Plaintiff that the issue with McGoldrick was an issue that Noller would have to handle.

**ANSWER:** It is admitted only that Ms. Derry had a call with Plaintiff on or about March 9, 2022, and that Ms. Derry told Plaintiff that she should apply for the job if she wanted it. By way of further response, Plaintiff stated her ongoing speculation that Ms. McGoldrick would block her from getting the job due to their personal falling out. In response, Ms. Derry stated that Mr. Noller would address any such hypothetical issues should they arise.

62. On or about March 15, 2022, Plaintiff asked Noller whether she would be fairly evaluated in her application for the Director of Family Engagement and Philanthropy position, considering what was said about her alleged inappropriate relationship with O'Neill and considering that the position reported to McGoldrick.

**ANSWER:** It is admitted only that Plaintiff met with Mr. Noller on or about March 15, 2022. The remaining allegations in this paragraph relate to a privileged climate audit conducted by outside counsel to Villanova, and the answer to those allegations is privileged. Without waiver of any privilege, it is admitted only that Villanova retained outside counsel to conduct a privileged climate audit of the Office of University Advancement; that any questions asked during the audit were appropriate to investigate allegations of inappropriate conduct; and that Plaintiff faced no adverse action.

63. Noller responded that these were good questions and asked Plaintiff if she really wanted the position, due to the issues between McGoldrick and her.

**ANSWER:** Villanova lacks sufficient information to form a belief as to the truth of the allegations in this paragraph and the allegations are therefore denied.

64. Plaintiff told Noller that she wanted the position. Plaintiff further told Noller that it was important to her to ensure that the selection process would be fair since she would be assessed by colleagues and a hiring manager who may have previously made sexist comments.

**ANSWER:** Denied as stated. It is admitted only that Plaintiff told Mr. Noller about her ongoing speculation that Ms. McGoldrick would block her from getting the job due to their personal falling out. And that Mr. Noller stated that Ms. McGoldrick would remain professional about the hiring decision. Villanova lacks sufficient information to form a belief as to the truth of the remaining allegations in this paragraph and the allegations are therefore denied.

65. Plaintiff requested mediation with McGoldrick to ensure that there were no issues between them that would prevent her from being fairly evaluated for the Director of Family Engagement and Philanthropy position. Noller stated that he would get back to Plaintiff.

**ANSWER:** Admitted that Plaintiff stated that she wanted a mediation with Ms. McGoldrick to discuss their personal issues. Villanova lacks sufficient information to form a belief as to the truth of the remaining allegations in this paragraph and the allegations are therefore denied.

66. On March 23, 2022, Plaintiff received a "Highly Successful" performance review rating.

**ANSWER:** Admitted only as to Plaintiff's overall rating. By way of further response, Plaintiff's performance review also addresses areas for her improvement.

67. On March 30, 2022, Plaintiff applied for the posted Director of Family Engagement and Philanthropy position.

**ANSWER:** Admitted.

68. Plaintiff was qualified for the position.

**ANSWER:** Denied as stated. It is admitted only that Plaintiff met the minimum qualifications for the position. Of the candidates that ultimately applied, Plaintiff was not the most qualified for the position.

69. The hiring manager for the Director of Family Engagement and Philanthropy position was McGoldrick.

**ANSWER:** Admitted.

70. McGoldrick reported to Noller.

**ANSWER:** Admitted.

71. On April 7, 2022, Plaintiff told Noller that she applied for the Director of Family Engagement and Philanthropy position, and stated that she had questions "related to the selection of panelists that would be interviewing [her] and how there are checks & balances to help protect that those assessing [her] aren't the same people who said slanderous sexist things against [her] during the UA investigation."

**ANSWER:** It is admitted only that Plaintiff emailed Mr. Noller on April 7, 2022. Plaintiff's description of that email is denied, as that document speaks for itself.

72. On April 7, 2022, Noller responded, "From a next steps standpoint, it isn't uncommon for postings to be open for a number of weeks before any action is taken so this timeline is still on track."

**ANSWER:** It is admitted only that Mr. Noller responded to Plaintiff's email on April 7, 2022. Plaintiff's description of that email is denied, as that document speaks for itself.

73. On April 20, 2022, Plaintiff interviewed for the Director of Family Engagement and Philanthropy position with Marbot, Mary Cunningham (female), Executive Director of Prospect Development, and Ramon Guzman (male), Major Gift Officer, College of Liberal Arts and Sciences.

**ANSWER:** Admitted. By way of further response, Plaintiff was one of five candidates that interviewed for the position.

74. On April 20, 2022, following the above, Plaintiff interviewed for the Director of Family Engagement and Philanthropy position with Gallagher and Susan McDonnell (female), Executive Director of Stewardship.

**ANSWER:** Admitted. By way of further response, Plaintiff was one of five candidates that interviewed for the position.

75. On May 4, 2022, in a meeting with Noller and Baladez, Defendant failed to promote Plaintiff to the Director of Family Engagement and Philanthropy position.

**ANSWER:** Denied as stated. It is admitted only that Plaintiff met with Mr. Noller and Mr. Baladez on May 4, 2022 and that they explained that the Director of Family Engagement and Philanthropy position would be filled by an external candidate with more experience.

76. When Plaintiff asked if Defendant could explain its process, Baladez responded that, when Defendant considers internal candidates, it assesses mutual fit and, in Plaintiff's case, determined that it would not work.

**ANSWER:** Denied as stated. During the May 4, 2022 meeting, there was a discussion about Plaintiff's readiness for a management position based on her handling of her personal conflict with the hiring manager, including by telling colleagues that she was a shoo-in for the

job but that Ms. McGoldrick was going to block her from the position based on a personal grudge.

77. Baladez stated that, with internal candidates, Defendant sought more than just skillset, and sought a “fit” for the team.

**ANSWER:** Villanova lacks sufficient information to form a belief as to the truth of the allegations in this paragraph and the allegations are therefore denied.

78. Noller stated that, in the last few weeks, he had begun to question Plaintiff’s “readiness to be a manager.” Noller stated that Plaintiff had approached the job opportunity “in a retaliatory way, and it look[ed] very retaliatory on [her] part.”

**ANSWER:** Denied as stated. Villanova admits only that during the May 4, 2022 meeting, there was a discussion about Plaintiff’s readiness for a management position and the way in which she handled her interpersonal conflict with McGoldrick. The allegations are otherwise denied.

79. Baladez asked Plaintiff why she wanted the position, considering that she would have been reporting to McGoldrick.

**ANSWER:** Upon information and belief, it is admitted only that Baladez asked Plaintiff why she wanted the position because of her personal conflict with McGoldrick. The allegations are otherwise denied.

80. Plaintiff understood this to mean that her sex discrimination complaints regarding McGoldrick were being used against her in the hiring process.

**ANSWER:** Villanova lacks sufficient information to form a belief as to the truth of the allegations in this paragraph and the allegations are therefore denied. By way of further response, Plaintiff did not file a complaint of sex discrimination.

81. Plaintiff responded that these Director positions were rarely open, and she wanted the opportunity to advance and grow her career at Defendant. Plaintiff further stated that she did not understand why it would be out of the question for her to report to McGoldrick.

**ANSWER:** Villanova admits that Plaintiff made comments similar to these. Villanova otherwise denies the allegations.

82. Baladez informed Plaintiff that McGoldrick was aware of Plaintiff questioning whether she would be evaluated fairly for the Director of Family Engagement and Philanthropy position.

**ANSWER:** Denied as stated. It is admitted only that Baladez informed Plaintiff that, because Plaintiff had complained to numerous people at Villanova that she believed McGoldrick would prevent her from getting the position due to their personal conflict, McGoldrick had heard about Plaintiff's complaints. The allegations are otherwise denied.

83. Plaintiff stated that she was concerned because of the sexist comments that were made about her.

**ANSWER:** Denied as stated. Villanova admits only that Plaintiff raised concerns about questions allegedly asked during the privileged climate audit conducted by outside counsel to Villanova. Villanova lacks sufficient information to form a belief as to whether Plaintiff characterized such questions as "sexist." The allegations are otherwise denied.

84. Baladez responded that what was said about her was not that bad.

**ANSWER:** Denied.

85. Instead of promoting Plaintiff, Defendant selected Joshua Foster (male), an external candidate.

**ANSWER:** Admitted only that Joshua Foster was an external applicant who was selected for the Director of Family Engagement and Philanthropy position based on his qualifications. The remaining allegations are denied.

86. Plaintiff was more qualified for the Director of Family Engagement and Philanthropy position than Foster.

**ANSWER:** Denied. By way of further response, Plaintiff was considerably less qualified that Mr. Foster. Among other things, Mr. Foster had a more advanced educational background and more years of experience in fundraising, including specific experience in family philanthropy at another university.

87. On June 17, 2022, Guzman told Plaintiff that he had selected her as the candidate to move forward for the Director of Family Engagement and Philanthropy position, but he had been overruled. Guzman told Plaintiff that, when he shared his opinion about Plaintiff with McGoldrick on April 27, 2022, she was not pleased to hear the same and criticized Plaintiff. Guzman stated that McGoldrick was looking to hire a male candidate because Defendant had not had any males on that team before and a male employee would round out the team.

**ANSWER:** Villanova lacks sufficient information to form a belief as to the truth of the allegations in this paragraph and the allegations are therefore denied. Further, it is specifically denied that Villanova's hiring decision was based on any candidate's sex.

88. On June 27, 2022, Plaintiff went out of work on a medical leave of absence due to the sex discrimination and retaliation to which she was subjected by Defendant.

**ANSWER:** Denied as stated. On June 27, 2022, Plaintiff notified Villanova that she was going on short-term disability and attached a doctor's note for an unspecified medical condition. It is specifically denied that Plaintiff cited sex discrimination or retaliation as the

basis for taking any leave. The remaining allegations in this paragraph are conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

89. On August 11, 2022, Plaintiff resigned from her employment with Defendant.

**ANSWER:** Admitted.

90. Defendant's discriminatory and retaliatory treatment of Plaintiff as set forth herein was sufficiently severe and/or pervasive such that a reasonable person in Plaintiff's position would have found the terms and conditions of employment to have been altered and the work environment created as a result thereof to be hostile and abusive.

**ANSWER:** Denied.

91. Defendant's treatment of Plaintiff as set forth in the preceding paragraph was sufficiently severe and/or pervasive such that Plaintiff in fact believed the terms and conditions of her employment had changed and that the work environment created as a result thereof had become hostile and abusive.

**ANSWER:** Denied.

92. Plaintiff resigned from her employment with Defendant due to the severity of the sex discrimination and retaliation to which she had been subjected and the emotional distress to which she had been subjected as a result of the same.

**ANSWER:** Denied.

93. Plaintiff's sex and her complaint of sex discrimination were each determinative and/or motivating factors in Defendant's discriminatory and retaliatory treatment of her, including subjecting her to a hostile work environment and failing to promote her to the Director of Family Engagement and Philanthropy position.

**ANSWER:** Denied.

94. As a direct and proximate result of the discriminatory and retaliatory conduct of Defendant, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

**ANSWER:** Denied.

**COUNT I – TITLE VII**

95. Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

**ANSWER:** Villanova repeats its answers to each and every allegation referenced above as if fully stated herein.

96. By committing the foregoing acts of discrimination and retaliation, Defendant has violated Title VII.

**ANSWER:** Denied.

97. Defendant acted with malice and/or reckless indifference toward the federally protected rights of Plaintiff and its conduct warrants the imposition of punitive damages.

**ANSWER:** Denied.

98. As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

**ANSWER:** Denied.

99. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until the Court grants the relief requested herein.

**ANSWER:** The allegations in this paragraph are conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

100. No previous application has been made for the relief requested herein.

**ANSWER:** Villanova lacks sufficient information to form a belief as to the truth of the allegations in this paragraph and the allegations are therefore denied.

**COUNT II – PHRA**

101. Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

**ANSWER:** Villanova repeats its answers to each and every allegation referenced above as if fully stated herein.

102. By committing the foregoing acts of discrimination and retaliation, Defendant has violated the PHRA.

**ANSWER:** Denied.

103. As a direct and proximate result of Defendant's violations of the PHRA, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

**ANSWER:** Denied.

104. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

**ANSWER:** Denied.

105. No previous application has been made for the relief requested herein.

**ANSWER:** Villanova lacks sufficient information to form a belief as to the truth of the allegations in this paragraph and the allegations are therefore denied.

**RELIEF**

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendant's unlawful conduct, and specifically prays that this Court grant the following relief to Plaintiff by:

(a) declaring the acts and practices complained of herein to be in violation of Title VII;

(b) declaring the acts and practices complained of herein to be in violation of the PHRA;

(c) enjoining and permanently restraining the violations alleged herein;

(d) entering judgment against Defendant and in favor of Plaintiff in an amount to be determined;

(e) awarding damages to make Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendant's unlawful conduct;

(f) awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendant's unlawful conduct;

(g) awarding punitive damages to Plaintiff under Title VII.

(h) awarding Plaintiff such other damages and relief as is appropriate under the statutes that form the basis of this matter.

(i) awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and

(j) granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

**ANSWER:** Denied. Villanova did not commit any unlawful conduct. By way of further response, Plaintiff is not entitled to the relief she requests from the Court.

**AFFIRMATIVE DEFENSES**

1. Plaintiff has failed to state claims upon which relief can be granted.

2. Plaintiff's claims are barred, in whole or in part, because Plaintiff cannot establish the necessary elements of her claims.

3. The claims in the Complaint are barred to the extent that they exceed the allegations in the Charge filed by Plaintiff with the PHRC and the EEOC.

4. Plaintiff's claims are barred because, at all times, Villanova complied in good faith with all applicable statutes and regulations.

5. Defendant did not subject Plaintiff to any discriminatory conduct and, therefore, Plaintiff is not entitled to compensatory or punitive damages.

6. All decisions and actions taken by Defendant with respect to Plaintiff's employment were made or taken in good faith and for legitimate non-discriminatory and non-retaliatory reasons.

7. If any actions of Defendant upon which any of Plaintiff's claims are based were motivated by any discriminatory or retaliatory factors, which Defendant denies, the same actions would have been taken in the absence of any such impermissible motivating factors.

8. Plaintiff's claims are barred, in whole or in part, by the doctrines of estoppel, laches, unclean hands, and/or waiver.

9. Plaintiff's claims are barred in whole or in part to the extent that Plaintiff has failed to mitigate any alleged damages Plaintiff claims to have sustained (the entitlement to recovery for which is expressly denied); alternatively, any claims for relief for lost earnings and/or benefits must be set off and/or reduced by wages, compensation, pay and benefits, or other earnings or remunerations, profits, and benefits received

10. Any injury or damages suffered by Plaintiff, to the extent actually incurred, were caused by reason of Plaintiff's own wrongful acts, misconduct and/or negligence.

11. Any injury or damages suffered by Plaintiff, to the extent actually incurred, were caused by individuals or entities other than Villanova.

12. Plaintiff's claims are or may be barred, in whole or in part, to the extent that she failed to exhaust applicable administrative remedies.

13. Villanova reserves the right to assert such additional defenses as are warranted in the event that discovery or further investigation indicates that such defenses would be appropriate.

Dated: July 10, 2023

Respectfully submitted,

*/s/ Michael E. Baughman, Esq.*
Michael E. Baughman, Esq.
Mia S. Marko, Esq.
TROUTMAN PEPPER HAMILTON SANDERS LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Telephone: 215.981.4000
Michael.Baughman@troutman.com
Mia.Marko@troutman.com

*Attorneys for Defendant Villanova University*

**EXHIBIT A**




December 20, 2022

Amy Galette
208 E. 4th Avenue
Conshohocken, PA 19428

Hedya Aryani
Associate General Counsel
800 Lancaster Avenue
Villanova, PA 19085

RE: Amy Galette vs. Villanova University
PHRC Case No. 202200023
EEOC Case No. 17F202261122

Dear Parties:

The Pennsylvania Human Relations Commission reviewed the above-referenced Complaint and considers this case closed on the date of this letter because there was insufficient evidence to establish discrimination and a copy of this finding is enclosed in service to Complainant pursuant to 43 P.S. §959(c).

The Pennsylvania Human Relations Act affords both the Complainant and the Respondent the opportunity to comment after the final disposition of the Complaint. Written comments may be submitted to the Director of Enforcement, 333 Market Street, 8th Floor, Harrisburg, PA 17101. In addition, enclosed is an important Notice of Complainant's Rights that explains the right to request a Preliminary Hearing if there is a disagreement with the Commission's decision pursuant to 16 Pa Code §42.62 and the right to file a complaint* in the Court of Common Pleas pursuant to 43 P.S. Section 962(c). *Please note that the complaint must be filed within two years of the date of closure.

Sincerely:

Chad Dion Lassiter MSW

Chad Dion Lassiter, MSW
Executive Director

cc: Emily R. Derstine Friesen Esquire
Console Mattiacci Law, LLC
1525 Locust Street, 9th Floor
Philadelphia, PA 19102

**PENNSYLVANIA HUMAN RELATIONS COMMISSION (PHRC)**
**NOTICE OF COMPLAINANT'S RIGHTS AFTER CLOSURE OF COMPLAINT**

**All communication related to closed cases must be directed to the Enforcement Division, PHRC Central Office, 333 Market Street, 8th Floor, Harrisburg, PA 17101. Phone: 717-787-4410.**

The complainant has the right to request a preliminary hearing in this matter, pursuant to the PHRC's Special Rules of Administrative Practice and Procedure, 16 Pa. Code § 42.62. Should the complainant desire to file such a request, it must be in writing, and it must state specifically the grounds upon which the complainant disputes the PHRC's closure. It may contain new evidence not previously considered. If the Request for a Preliminary Hearing is based upon new or previously unconsidered evidence, the nature, location, and form of the evidence in issue must be explicitly set forth in the request.

After careful review of the request, the PHRC will notify complainant as to whether a preliminary hearing has been granted. Should the PHRC grant a preliminary hearing, you will be provided with more information. Should PHRC accept the request, an attorney with the PHRC Office of Chief Counsel will conduct a thorough review of the investigative case file to determine whether the PHRC properly closed the complaint. The PHRC may also decide to reopen the complaint for further investigation instead of conducting a hearing. At any time, the complainant may decide to withdraw the request.

Should the complainant desire to file a Request for a Preliminary Hearing, **it must be filed in accordance with PHRC's Special Rules of Administrative Practice and Procedure, 16 Pa. Code § 42.62, received by PHRC within ten (10) days of the receipt of this notice to be entitled to these rights, identified as a "Request for Preliminary Hearing," and be addressed to Office of Appeals, 333 Market St., 8th Floor, Harrisburg, PA 17101. Email: oa-phrcoffofappeals@pa.gov.**

In addition, you are hereby notified, as required by Section 12(c) of the Pennsylvania Human Relations Act, 43 P.S. Section 962(c), that upon closure, the complainant has two years to file a complaint in the Court of Common Pleas of the county in which the alleged unlawful discriminatory practice took place. The complainant may retain a private attorney regarding this matter or about any other rights he/she may have in this matter. Complainant's who file a complaint in the Court of Common Pleas are required by Section 12(c)(2) of the Pennsylvania Human Relations Act to serve the PHRC with a copy of the Court complaint. This copy must be served on the PHRC at the same time the complainant files it in Court. The copy is to be sent to: **Chief Counsel, 333 Market St., 8th Floor, Harrisburg, PA 17101.**

**ADDITIONAL RIGHTS IN CASES FILED WITH THE**
**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Since your charge was filed under Title VII of the Civil Rights Act, Americans with Disabilities Act (ADA) or the Age Discrimination in Employment Act (ADEA), which is enforced by the US Equal Employment Opportunity Commission (EEOC), you also have the right to request the EEOC to review this action. To secure a review, you must request the review in writing within fifteen (15) days of your receipt of this letter. This request should be sent to **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, PHILADELPHIA DISTRICT OFFICE, SUITE 1000, 801 MARKET STREET, PHILADELPHIA, PA 19107. Email:** phlstateandlocal@eeoc.gov. You can find more information about the U.S. Equal Employment Opportunity Commission at www.eeoc.gov.

**Do not request a substantial weight review if you have requested a preliminary hearing at PHRC. If you requested a preliminary hearing, you may request a substantial weight review only after you receive a letter denying your request from PHRC.**

**COMMONWEALTH OF PENNSYLVANIA**

**GOVERNOR'S OFFICE**

**PENNSYLVANIA HUMAN RELATIONS COMMISSION**

| | |
|---|---|
| **Amy Galette,** | : |
| **Complainant** | : |
| | : |
| **vs.** | : **PHRC Case No. 202200023** |
| | : **EEOC Case No. 17F202261122** |
| **Villanova University,** | : |
| **Respondent** | : |

**FINDING OF NO PROBABLE CAUSE**

On July 06, 2022, Amy Galette (Complainant) filed a Complaint of discrimination against Villanova University (Respondent). Complainant has met all jurisdictional requirements under the Pennsylvania Human Relations Act.

Complainant alleges that Respondent discriminated against her based on her protected classes of sex (female) and retaliation in violation of 43 P.S. §955 when it subjected her to harassment and failed to promote her.

Respondent denies all allegations of discrimination. Respondent admits that the Complainant did not get the position, but further states that she was not selected because another candidate was more qualified for the position.

To prevail, the evidence must show (1) the Complainant was subjected to comments or conduct based upon her protected class and (2) the conduct resulted in an actual change in the terms and conditions of employment or was sufficiently severe to create a hostile environment.

Based on the investigation, the Complainant complained about allegations that were made about her having an inappropriate relationship with a male employee. However, there is insufficient evidence to indicate she was subjected to pervasive comments or conduct based on her sex.

To prevail, the evidence must show (1) the Complainant applied for a job which she met the stated qualifications.

Based on the investigation, a review of resume and interview-related documents, for both Mr. Foster and the Complainant, shows that Mr. Foster was more qualified than the Complainant for the Director of Family Engagement and Philanthropy position. Furthermore, the Respondent

asserted that it questioned the Complainant's readiness for a management position due to the way she handled her personal conflict with Ms. McGoldrick in the workplace. Respondent provided a legitimate, non-discriminatory reason for not promoting the Complainant.

To prevail, the evidence must show (1) there was a causal connection between the protected activity and the adverse treatment.

Based on the investigation, the Complainant had been having ongoing issues with Ms. McGoldrick prior to her complaining about the allegations of relational misconduct made against her. The Respondent advised that it questioned the Complainant's readiness for a management position due to the way she handled this personal conflict in the workplace. Furthermore, the evidence shows that Joshua Foster was more qualified than the Complainant for the Director of Family Engagement and Philanthropy position. The Respondent provided a legitimate, non-discriminatory reason for not promoting the Complainant.

WHEREFORE, based on the evidence described above, the Pennsylvania Human Relations Commission concludes that there is insufficient evidence to support a finding of probable cause. Insufficient evidence exists to establish that Villanova University discriminated against Amy Galette on the basis of sex in violation of Section 5(a) of the Pennsylvania Human Relations Act.

WHEREFORE, based on the evidence described above, the Pennsylvania Human Relations Commission concludes that there is insufficient evidence to support a finding of probable cause. Insufficient evidence exists to establish that Villanova University discriminated against Amy Galette on the basis of retaliation in violation of Section 5(d) of the Pennsylvania Human Relations Act

____________________________________

Chad Dion Lassiter, MSW
Executive Director

Date:

**EXHIBIT B**

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Philadelphia District Office
801 Market St, Suite 1000
Philadelphia, PA 19107
(267) 589-9700
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161 & 161-A)

**To:** Amy Galette
208 E. 4th Avenue
Conshohocken, PA 19428

**Re:** Amy Galette v. Villanova University
EEOC Charge Number: 17F-2022-61122

EEOC Representative and email: State Local and Tribal Program Manager
PHLSTATEANDLOCAL@EEOC.GOV

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) received this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

Please retain this notice for your records.

On Behalf of the Commission:

Digitally Signed By: Karen McDonough 2/7/2023

Karen McDonough
Deputy District Director

cc:

For Respondent

Hedya Aryani
Associate General Counsel
Villanova University
800 Lancaster Avenue
Villanova, PA 19085

For Charging Party

Emily R. Derstine Friesen, Esq.
Console Mattiacci Law, LLC
1525 Locust Street, 9th Floor
Philadelphia, PA 19102

# INFORMATION RELATED TO FILING SUIT UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

## IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) received the document. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

## ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing *Defendant Villanova University's Answer And Affirmative Defenses To Plaintiff Amy Galette's Complaint* was served on all parties of record via ECF filing.

*/s/ Mia S. Marko*
Mia S. Marko